# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK
### CENTRAL ISLIP

|  |  |
|---|---|
| MARTIN SISCA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>KRAFT HEINZ FOODS COMPANY,<br><br>Defendant | 2:24-cv-00813<br><br><br><br>Class Action Complaint<br><br><br>Jury Trial Demanded |

Plaintiff Martin Sisca ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

## I.    INCREASING DEMAND FOR REAL CHEESE

1.    Consumers are increasingly seeking healthier choices across the foods they buy, including meats, dairy, breads and snacks.

2.    The result is increased attention to a food's ingredients.

3.    According to a food industry executive, "Consumers are reading product labels more closely, and we are seeing the effects of a simple food movement when it comes to ingredients," especially in snack foods.

4.    Consumer research company Mintel attributed this demand for "real ingredients" in part due to media attention focused on lack of transparency in the

food industry.[1]

5.    This is because shoppers want to consume foods with the types of ingredients they have in their refrigerators and pantries, instead of highly processed and synthetic substitutes.

6.    Shoppers are seeking "healthy indulgences," or "treat[s] with all the flavor and taste desired, without the guilt of eating something 'bad' for you," due to the presence of ingredients associated with positive health benefits.

7.    One of these ingredients is cheese.

8.    Industry data confirms the increased popularity of cheese, with price and per capita consumption rising over the past decade relative to other foods, reaching an all-time high of 50 lbs.

9.    Multiple reasons explain the surge in popularity for cheese.

10.    First, consumer demand for cheese is consistent with growing preferences for natural foods, made without chemicals or harsh processing.

11.    Cheese's definition, as "the coagulated, compressed, and usually ripened curd of milk separated from the whey," fits this bill.[2]

12.    Second, more than half the public consider cheese "healthy" and "nutritious," because it is high in protein and good fats, with key vitamins and

---

[1] Lynn Dornblaser, Director, Innovation & Insight, Mintel, "Clean Label: Why this Trend is Important Now," 2017.
[2] Merriam-Webster definition.

minerals like calcium.

13.   That this factor was important to consumers was observed by a marketing executive, noting how "Dairy, in its many forms, is increasingly seen as an inherently healthy simple food."

14.   Third, cheese is highly versatile, leading to its usage in a growing number of prepared and packaged applications, instead of only consumed in cubes, slices, or sticks.

15.   Fourth, since research shows "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging" to "develop[] sensory [and other] expectations" about its ingredients, food marketers know claims like "made with real cheese" add value to shelf stable foods consumers may have written off years ago as full of artificial and highly processed ingredients.[3]

16.   This is because cheese "has indulgent properties for consumers who want to 'treat themselves,'" in addition to its reputation as nutritious.[4]

## II.   LEGAL BACKGROUND

17.   The preference for wholesome ingredients like cheese instead of lower

---

[3] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Product Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326.

[4] https://www.freedoniagroup.com/blog/3-top-trends-impacting-cheese-sales

quality cheese substitutes is not new.

18. In response to an unregulated environment where companies substituted cheese by-products and yellow-colored vegetable oils for the real cheese prominently advertised, the Pure Food and Drug Act of 1906 sought to protect consumers from such deception.

19. These requirements were strengthened when Congress adopted the Federal Food, Drug and Cosmetic Act ("FFDCA") in 1938. 21 U.S.C. § 301 *et seq.*

20. As a leading dairy producer, New York was one of the first states to adopt the FFDCA through its Agriculture and Markets Law ("AGM"), to "encourage the agricultural industry…[and] to prevent frauds in the traffic therein." AGM § 3.[5]

21. The Legislature considered the AGM "an exercise of the police power of the state and a discharge of its obligations for the promotion of the general welfare."

22. These laws prohibited numerous types of "misbranding," an

---

[5] Article 4, Dairy Products, AGM § 46 *et seq.*; Article 17, Adulteration, Packing, and Branding of Food and Food Products, AGM § 198 *et seq.*; Official Compilation of Codes, Rules and Regulations of the State of New York ("N.Y.C.R.R."), Title 1, Department of Agriculture and Markets, Chapter I, Milk Control, Subchapter A Dairy Products (Article 4, AGM), Part 17, Requirements for the Labeling of, and Definitions and Standards of Identity for, Milk, Milk Products and Frozen Desserts, 1 N.Y.C.R.R. §§ 17.18 ("Additional standards of identity for milk and milk products.") and 17.20 ("Requirements applicable to the labeling of milk, milk products and frozen desserts.") (adopting Parts 130, 131 and 133 of Title 21), Chapter VI, Food Control, Subchapter C, Food and Food Products (Article 17, AGM), 1 N.Y.C.R.R. § 250.1 *et seq.*; 1 N.Y.C.R.R. § 259.1(a) (adopting Parts 100, 101 and 102 of Title 21).

anachronistic term used to denote labeling practices which were misleading to consumers. 21 U.S.C. § 343; AGM § 201.

23.   However, because it was expected that companies would push the limits of what the laws allowed, a "catchall" provision covered all other labeling that was "false or misleading in any particular." 21 U.S.C. § 343(a); AGM § 201(1).

## III.  PRODUCT LABELING

24.   While the last several years have seen the growth of "meal kits," which consist of fresh, natural ingredients consumers can quickly add together for a healthy meal, "Makers of certain shelf-stable products, however, want shoppers to know that there are other ways to whip up a meal with a minimum of fuss."[6]

25.   These "center aisle" stalwarts are increasingly reminding the public of their high-quality ingredients, whether real vegetables or real cheese, that can conveniently deliver tasteful nutrition.

26.   Recognizing this trend, Kraft Heinz Foods Company ("Defendant") markets Velveeta Shells & Cheese, described as "Made With Real Cheese," above macaroni shells covered in what appears to be cheese ("Product").

---

[6] Bridget Goldschmidt, Progressive Grocer, Center Store Offers Solutions to Rival Meal Kits, Oct. 4, 2017.



27.   The lower part of the package states "Original," above "Shell Pasta & Cheese Sauce."

28.   Despite the promotion as "Made With Real Cheese," the fine print of the ingredient list on the back of the package reveal the predominant non-macaroni ingredients are lesser quality, non-cheese ingredients, confirmed by listing "WHEY [and] [CANOLA OIL]" first and second as part of the cheese sauce before "CHEDDAR CHEESE."  21 C.F.R. §§ 101.4(a)(1), 101.4(b).



**INGREDIENTS:** ENRICHED MACARONI PRODUCT (WHEAT FLOUR, NIACIN, FERROUS SULFATE [IRON], THIAMIN MONONITRATE [VITAMIN B1], RIBOFLAVIN [VITAMIN B2], FOLIC ACID), CHEESE SAUCE (WHEY, CANOLA OIL, CHEDDAR CHEESE [MILK, CHEESE CULTURE, SALT, ENZYMES], WHEY PROTEIN CONCENTRATE, MILK, MILK PROTEIN CONCENTRATE, SODIUM PHOSPHATE, CONTAINS LESS THAN 2% OF SALT, LACTIC ACID, SODIUM ALGINATE, SORBIC ACID AS A PRESERVATIVE, OLEORESIN PAPRIKA [COLOR], ENZYMES, CHEESE CULTURE, ANNATTO EXTRACT [COLOR], MILKFAT, NATURAL FLAVOR).

## IV.  LABELING IS MISLEADING

29.   Sections 349 and 350 of the New York General Business Law ("GBL") were modeled on the Federal Trade Commission Act ("FTC Act"). 15 U.S.C. 45 *et seq*.

30.   In considering whether advertising is misleading in a material respect, the FTC Act recognizes that the effect of advertising includes not just representations

7

made or suggested by words and images, "but also the extent to which [it] fails to reveal facts material in the light of such representations." 15 U.S.C. § 55(a)(1).

31.    This includes the extent to which labeling may fail to prominently and conspicuously reveal facts relative to the proportions or absence of certain ingredients or other facts concerning its ingredients, which are of material interest to consumers.

32.    The Product is "misbranded" and misleads consumers because its labeling is false or misleading in any particular. 21 U.S.C. § 343(a)(1); AGM § 201(1).

33.    In place of the "real cheese" promised on the label, the cheese sauce is predominantly made from whey and canola oil.

34.    Whey is not a required ingredient in any "real cheese," as consumers understand this term.

35.    Whey is the watery liquid which remains when curds are strained from milk to produce "real cheese."

36.    This consists predominantly of lactose, a sugar, and a small amount of protein.

37.    However, whey lacks milkfat, the most important ingredient in real cheese, and key nutrients in cheese.

38.    Since one pound of cheese results in nine pounds of whey, the increased

domestic production of cheese has created a surplus of whey.

39. Whey is mainly used as an ingredient for dietary supplements, or as fertilizer.[7]

40. Canola oil is a highly processed vegetable oil.

41. Canola oil is not a natural ingredient like real cheese, because it is subjected to hydrogenation and/or interesterification with the use of chemical catalysts.

42. Canola oil contains harmful trans fats and no protein, unlike real cheese, which contains one-quarter protein, healthy fats and essential vitamins and minerals.

43. Whey and canola oil lack the nutritional value of real cheese in terms of proteins, healthy fats and other vitamins and minerals.

44. Whey and canola oil lack the savory taste of real cheese because they lack the components of real cheese.

45. The representation the Product is "Made With Real Cheese" results in it being misleading to consumers because they will expect the predominant component of the cheese sauce to be "real cheese," even though its most predominant ingredients are whey and canola oil. 21 U.S.C. § 343(a)(1); AGM § 201(1).

46. The front label statements of "Made With Real Cheese" and "Cheese Sauce" fail to prominently and conspicuously reveal facts relative to the proportions

---

[7] https://thecounter.org/whey-disposal-reuse-cheese-dairy-byproduct/

or absence of ingredients, specifically, the relatively small amount of real cheese, and its substitution with whey and canola oil.

47.   The replacement of real cheese with whey and canola oil is of material interest to consumers because real cheese is significantly more expensive than whey and canola oil.

48.   The replacement of real cheese with whey and canola oil is of material interest to consumers because real cheese is significantly more nutritious and healthier than whey and canola oil.

49.   "Made With Real Cheese" is misleading and a "half-truth," because even though the cheese sauce contains some real cheese, its predominant ingredients are lower quality cheese substitutes, whey and canola oil.

50.   By replacing real cheese with whey and canola oil, the cheese sauce lacks the quality, nutritional, and savory attributes that consumers expect from Product promoted as "Made with Real Cheese."

## V.   CONCLUSION

51.   The Product could have included more real cheese ingredients like cheddar cheese but used synthetic and/or highly processed by-products such as palm oil and dairy product solids, and even the unknown ingredient of bakers' cheese, because they cost less than real cheese.

52.   Consumers purchasing products touted as "Made With Real Cheese" are

misled because the cheese sauce is predominantly from ingredients other than real cheese, the types of ingredients such purchasers are seeking to avoid.

53.    Reasonable consumers viewing the label which states, "Made With Real Cheese," "cheese sauce," and a picture of macaroni covered in what appears to be cheese will expect the non-macaroni component to be predominantly real cheese.

54.    By adding whey and canola oil, purchasers get a smaller amount of real cheese ingredients than what is promised or implied by the front label.

55.    As a result of the false and misleading representations and omissions, the Product is sold at a premium price, $2.79 for 12 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## JURISDICTION

56.    Plaintiff is a citizen of New York.

57.    Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

58.    The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

59.    Plaintiff is a citizen of New York.

60.    Defendant is a citizen of Delaware and Pennsylvania.

61.    The class of persons Plaintiff seeks to represent includes persons who

are citizens of a different state from which Defendant is a citizen.

62.   The members of the proposed class Plaintiff seeks to represent are more than one hundred, because the Product has been sold at hundreds of retail stores in this State, such as grocery stores, big box stores, warehouse club stores, drug stores, convenience stores, and online to citizens of this State.

63.   The Court has jurisdiction over Defendant because it transacts business within New York and sells the Product to consumers within New York from hundreds of retail stores in this State and online to citizens of this State.

64.   Defendant transacts business in New York, through the sale of the Product to citizens of New York from hundreds of retail stores in this State and online to citizens of this State.

65.   Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

66.   Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State.

67.   Defendant has committed tortious acts outside this State by labeling the

Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

68.   The Court has jurisdiction over Defendant because it transacts business within New York and sells the Product to consumers within New York from hundreds of retail stores in this State and online to citizens of this State.

69.   The Court has jurisdiction over Defendant because it has committed tortious acts within this State through the labeling, distribution and/or sale of the Product, which is misleading to consumers in this State.

70.   The Court has jurisdiction over Defendant because it has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, attributes, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## VENUE

71.   Plaintiff resides in Nassau County.

72.   Venue in the Central Islip Division of this District is based on Plaintiff's residence in Nassau County.

73.   Venue is based on Plaintiff's residence in Nassau County because a substantial or the entire part of the events or omissions giving rise to his claims occurred in Nassau County, including his purchase of the Product based on the representations and omissions identified here.

74.   Venue is based on Plaintiff's residence in Nassau County because this is where his causes of action accrued, including his purchase, payment of money for or towards, use and/or consumption of the Product.

75.   Plaintiff purchased, paid money for or towards, used and/or consumed the Product in reliance on the representations and omissions identified here in Nassau County.

76.   Plaintiff first became aware the representations and omissions were false and misleading in Nassau County.

## PARTIES

77.   Plaintiff Martin Sisca is a citizen of Nassau County, New York.

78.   Defendant Kraft Heinz Foods Company is a Delaware corporation with a principal place of business in Pennsylvania.

79.   Plaintiff is like most consumers and seeks foods promoted as containing ingredients known to have health benefits.

80.   Plaintiff is like most consumers and values the nutrients provided by real cheese.

81.   Plaintiff is like most consumers and seeks foods promoted as containing the types of ingredients they are likely to have in their homes, like real cheese.

82.   Plaintiff is like most consumers and values the taste provided by real cheese.

83.   Plaintiff is like most consumers and looks to the front label of foods to see what he is buying and to learn basic information about them.

84.   Plaintiff is like most consumers and is accustomed to the front label of packaging telling them if what they are buying contains an appreciable amount of the highlighted ingredients.

85.   Plaintiff is like most consumers and when he sees that a front label tells him a product is "made with" specific ingredients, he will expect it contains more than a de minimis or negligible amount of such ingredients instead of mainly lower quality substitutes for such highlighted ingredients.

86.   Plaintiff is like most consumers and when he saw the Product's front label telling him the non-macaroni component was "Made With Real Cheese," he believed this, and expected this part was predominantly real cheese.

87. Plaintiff did not expect this component to be mainly non-cheese ingredients, like whey and canola oil.

88. Plaintiff read, saw and relied on the label's statements of "Made with Real Cheese" with a picture of macaroni shells covered in what appeared to be cheese, and expected the cheese sauce was predominantly real cheese.

89. Plaintiff did not expect the non-macaroni component to contain a greater amount of non-cheese ingredients than real cheese.

90. Plaintiff did not expect that the Product would use whey and canola oil in place of adding more real cheese, including the cheddar cheese highlighted on the label.

91. Plaintiff purchased the Velveeta Shells & Cheese, described as "made with real cheese," with pictures of macaroni shells covered in what appeared to be real cheese, the labeling identified here, at grocery stores, drug stores, gas stations, pharmacies, big box stores, warehouse club stores, and/or convenience stores, in Nassau and/or Suffolk County, between December 2020and December 2023.

92. Plaintiff bought the Product at, around or exceeding the above-referenced price.

93. Plaintiff paid more for the Product than he would have had he known it contained a de minimis or negligible amount of real cheese, in absolute and relative terms, compared to lesser quality ingredients, as he would have paid less or not

purchased it.

94.   The Product was worth less than what Plaintiff paid, and he would not have paid as much absent Defendant's false and misleading statements and omissions.

## CLASS ALLEGATIONS

95.   Plaintiff seeks to represent the following class:

> All persons in New York who purchased Velveeta Shells & Cheese, described as "Made With Real Cheese," in New York during the statutes of limitations for each cause of action alleged.

96.   Excluded from the Class are (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing persons, (b) governmental entities, (c) the Court, the Court's immediate family, and Court staff and (d) any person that timely and properly excludes himself or herself from the Class.

97.   Common questions of issues, law, and fact predominate and include whether Defendant's representations and omissions were and are misleading and if Plaintiff and class members are entitled to damages.

98.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

17

99. Plaintiff is an adequate representative because his interests do not conflict with other members.

100. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

101. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

102. The class is sufficiently numerous and likely includes several thousand people.

103. This is because Defendant sells the Product to consumers from hundreds of its stores in the State Plaintiff is seeking to represent.

104. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
New York General Business Law ("GBL") §§ 349 and 350

105. Plaintiff incorporates by reference paragraphs 1-55.

106. The purpose of the GBL is to protect consumers against unfair and deceptive practices.

107. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

108. This is because consumers prefer food with ingredients which are

natural, minimally processed and nutritious instead of ingredients which are by-products of making such ingredients and highly processed, synthetic ingredients.

109. The labeling of the Product violated the GBL because the representations and omissions it was "Made With Real Cheese," when its non-macaroni component consisted predominantly of ingredients other than real cheese, whey and canola oil, was unfair and deceptive to consumers.

110. Plaintiff believed the Product's non-macaroni component was predominantly real cheese instead of from whey and canola oil.

111. Plaintiff paid more for the Product and would not have paid as much if he knew that the non-macaroni component was mostly not real cheese, but lesser quality cheese substitutes like whey and canola oil.

112. Plaintiff seeks to recover for economic injury and/or loss he sustained based on the misleading labeling and packaging of the Product, a deceptive practice under the GBL, by paying more for it than he otherwise would have.

113. Plaintiff will produce evidence showing how he and consumers paid more than they otherwise would have paid for the Product, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis and other advanced methodologies.

114. As a result of Defendant's misrepresentations and omissions, Plaintiff and class members suffered damages in the price premium paid for the Product,

which is the difference between what they paid for it and how much it would have been sold for without the false and misleading representations and omissions identified here.

## COUNT II
## New York Agriculture & Markets Law ("AGM") § 201

115. Plaintiff incorporates by reference paragraphs 1-55.

116. The Legislature intended for these laws against deception to be upheld in numerous ways, including "individual enterprise." AGM § 46.

117. AGM § 201 authorizes individuals to take measures to prevent consumer deception in the labeling of food.

118. Defendant made misrepresentations and omissions of material fact, that the Product was "Made With Real Cheese," even though its non-macaroni component was mainly from non-cheese substitutes like whey and canola oil, through its advertisements and marketing in various forms of media, product packaging and descriptions, and/or targeted digital advertising.

119. These representations and omissions were in violation of AGM § 201, which prohibits the "Misbranding of food."

120. The labeling violates AGM § 201(1), because "Made With Real Cheese" "is false or misleading" because it fails to disclose the presence of predominantly non-real cheese ingredients, whey and canola oil.

121. Defendant failed to truthfully disclose that the Product's non-macaroni

component contained a de minimis or negligible amount of real cheese, which it was required to do because it highlighted how it was "Made With Real Cheese."

122.  Defendant falsely and/or deceptively stated and/or implied the Product's non-macaroni component was predominantly real cheese, even though it was from lesser valued ingredients like whey and canola oil.

123. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

124. Defendant knew these statements and omissions were false and/or misleading.

125. Defendant intended for consumers to rely on its false statements and omissions for the purpose of selling the Product.

126. Plaintiff and class members did in fact rely upon these statements and omissions.

127. Reliance was reasonable and justified because of the public trust placed in companies selling foods, who expect them to be labeled accurately and in a non-misleading manner.

128. Plaintiff paid more for the Product, as he would not have paid as much or bought it if he knew that its non-macaroni component was predominantly from ingredients other than real cheese, such as whey and canola oil.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   February 3, 2024

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

Spencer Sheehan

Sheehan & Associates P.C.

*Counsel for Plaintiff*